675 So.2d 957 (1996)
Pamela FOSHEE, Appellant,
v.
HEALTH MANAGEMENT ASSOCIATES, etc., et al., Appellees.
No. 95-941.
District Court of Appeal of Florida, Fifth District.
May 10, 1996.
Rehearing Denied July 2, 1996.
*958 William W. Sydnor of the Law Offices of Dominick J. Salfi, P.A., Maitland, and Marcia K. Lippincott of Marcia K. Lippincott, P.A., Maitland, for Appellant.
Alan J. Landerman of Parker, Goodwin, McGuire, Burke, Landerman & Parker, P.A., Orlando, for Appellees Health Management Associates, Inc. of Delaware, Orlando HMA, Inc., d/b/a Orlando Health Management Associates, Inc., d/b/a University Behavioral Center and Florence M. Lally, R.N.
Jennings L. Hurt, III, and Michael V. Hammond of Rissman, Weisberg, Barrett, Hurt, Donahue & McLain, P.A., Orlando, for Appellee Ramon O. Martinez, M.D., d/b/a Central Florida Psychiatric Associates, P.A.
Robert A. Hannah, J. Charles Ingram and Robert J. Egan of Hannah, Marsee & Voght, P.A., for Appellee Edward Cabrera, M.D., d/b/a Orlando Family Medicine Associates, P.A.
DAUKSCH, Judge.
This is an appeal from an order dismissing a complaint alleging false imprisonment and intentional infliction of emotional distress against various persons. Those persons, *959 both natural and corporate, are in the health care business and the first question on appeal is whether the allegations of the complaint set up a medical malpractice claim requiring the plaintiff to comply with the pre-suit notice requirements of section 766.106, Florida Statutes (1989). See Tunner v. Foss, 655 So.2d 1151 (Fla. 5th DCA), rev. denied, 663 So.2d 630 (Fla.1995). The second question on appeal is whether the plaintiff can maintain an action against some of the defendants for deprivation of her rights under color of a state statute, the Baker Act, Chapter 394, Florida Statutes. 42 U.S.C. § 1983.
Appellant alleged in her complaint that she went to her treating physician, defendant Cabrera, who worked for a professional association, defendant Orlando Family Medicine Associates, for treatment of her headaches. He recommended hospitalization; she at first refused that but then agreed to admit herself to be monitored while undergoing medical treatment. Cabrera directed her to Florida Hospital so that she could be admitted to have her medications and vital signs monitored while undergoing the treatment. Before she could get to the hospital she was contacted by Cabrera who told her that Florida Hospital had no beds available and that she should go to defendant Health Management Associates, Inc., d/b/a University Behavioral Center. She was told to meet defendant Martinez, who practices under the name of Central Florida Psychiatric Associates, P.A. She was not told that Martinez is a psychiatrist, which he is, or that University Behavioral Center is a psychiatric facility, which it is.
Upon arriving at the Center plaintiff was told by employees there that she could not see Martinez until she was formally admitted into the facility. Defendant Lally, a nurse, told her she had to sign a voluntary admission form or she would be involuntarily detained under the Baker Act. Plaintiff refused to sign herself in and was then physically prevented from leaving. She was coerced and deceived to sign voluntary admission papers. No physician examined or consulted with her at the Center before her admission into the Center and Martinez and the others at the Center refused to allow her to leave. After she was kept there for two days, and only after she refused to sign the forms to have her insurance pay the Center and Martinez, she was allowed to go on her way.
Appellant sued Cabrera, the Center, Martinez and their respective corporations or professional associations. She also sued Florence Lally, the nurse involved.
Whether a plaintiff must give the requisite pre-suit notice required by the statute is fact-dependant. The statute itself defines what is a claim for medical malpractice.
766.106 Notice before filing action for medical malpractice; presuit screening period; offers for admission of liability and for arbitration; informal discovery; review.
(1) As used in this section:
(a) "Claim for medical malpractice" means a claim arising out of the rendering of, or the failure to render, medical care or services.
The allegations of the complaint, which must be taken as true, are what determine the facts. Stackhouse v. Emerson, 611 So.2d 1365 (Fla. 5th DCA 1993). It is up to the court to decide from the allegations in the complaint whether the claim arises "out of the rendering of, or the failure to render, medical care or services."
We have examined the complaint and have determined, firstly, that no cause of action against any of the defendants has been properly pleaded to support a claim under 42 U.S.C. § 1983.[1] Merely acting pursuant to a statute does not make one's conduct "under color of state law." Lugar v. Edmondson Oil Co., 457 U.S. 922, 938, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982). The deprivation of rights must be "fairly attributable to *960 the state." Id. And, it must be caused by the exercise of some right or privilege created by the State, and the party charged with the deprivation must be "a person who may fairly be said to be a state actor." Id. Further, "As a matter of substantive constitutional law the state-action requirement reflects judicial recognition of the fact that `most rights secured by the Constitution are protected only against infringement by governments.' " Id.; Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 156, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978). Lugar teaches that without limits such as these "private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them." Just because one acts pursuant to, or even under the authority of a statute does not make one a state actor under § 1983. Mechanics liens, garnishments, replevins and other such acts of deprivation are done with statutory authority and must be done in accordance with statutory procedure, but one availing himself of them certainly is not acting on behalf of the state or by the authority of the state. Legislation allows the implementation of the rules and procedures to effect the ends but in no way causes the actor to do so. If the actor misbehaves then it is not the government, but a private person, who has misbehaved and § 1983 does not offer relief from this type of misbehavior. See Harvey v. Harvey, 949 F.2d 1127 (11th Cir.1992) (construing Georgia involuntary commitment statute). Other relief is available, even though § 1983 affords none.
False imprisonment, an intentional tort, is defined as intentionally causing one to be restrained against her will. See Fla.Std. Jury Instr. (Civ.) MI 6.1. Intentional infliction of mental distress is also an intentional tort and it can be defined, loosely, as any outrageous conduct emotionally injurious to the claimant, which conduct is not violative of any other recognized tort. Because the actions of the chargeable defendants here can be deemed to fit within the false imprisonment category those actions will not support a claim of intentional infliction of emotional distress. See Boyles v. Mid-Florida Television Corp., 431 So.2d 627, 636 (Fla. 5th DCA 1983), approved, 467 So.2d 282 (Fla.1985).
Looking at the actions of the various defendants we have determined that as a matter of law that only the nurse, Lally, and her employer, the Center, Martinez and his professional association, Central Florida Psychiatric Associates, P.A., can be required to answer to the allegations of false imprisonment. The complaint sets up a cause of action against each of these because the allegations are that Lally, and her employer through her, wrongfully and intentionally prevented the plaintiff, against her will, from leaving the facility. By alleging coercion, deception and misrepresentation the plaintiff has alleged wrongfulness, even though that word is not used. The complaint alleges that Martinez, and his employer Central Florida Psychiatric Associates, P.A., ordered the Center to "admit" the plaintiff knowing that restraint would be used, without first examining her, and refusing to release her even though she repeatedly requested discharge. It is alleged collectively that Lally and Martinez, and their employers through them, used the provisions of the Baker Act to detain the plaintiff but did not follow its procedures in order to permit them legally to do so.
These allegations of false imprisonment do not allege any kind of medical malpractice under section 766, Florida Statutes, but do allege the intentional tort. We reverse the order of dismissal as to Lally, Martinez and their employers but affirm the dismissal as to Cabrera and his employer. There is no sufficient allegation that Cabrera's actions caused the tortious behavior alleged against the others.
AFFIRMED in part; REVERSED in part; REMANDED.
COBB and GOSHORN, JJ., concur.
NOTES
[1] Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.